**UNITED STATES COURT OF INTERNATIONAL TRADE**

_____

|  |  |  |
|---|---|---|
| 3A COMPOSITES USA, INC.; | : | |
| AFFORDABLE FURNITURE MFG. CO., INC.; | : | |
| ALL COVERINGS EVOLUTIONS; | : | |
| AXIS ENTERPRISES, INC.; | : | |
| BELLOFRAM CORP. D/B/A MARSH BELLOFRAM; | : | Court No. 20-1646 |
| BLIZZARD LIGHTING, LLC; | : | |
| CACTUS WELLHEAD LLC; | : | |
| CLAM CORPORATION; | : | |
| CLORE AUTOMOTIVE, LLC; | : | |
| COLLINS CO., LTD. D/B/A QUALITY CRAFT; | : | |
| CONCENTRIC INTERNATIONAL; | : | |
| CREEDON TECHNOLOGIES USA LLC; | : | |
| DESIGNED METAL CONNECTIONS, INC. D/B/A | : | |
| PERMASWAGE; | : | |
| DNJ ENGINE COMPONENTS, INC.; | : | |
| E. GLUCK CORPORATION; | : | |
| ELECTRONIC THEATRE CONTROLS INC. | : | |
| AND ITS SUBSIDIARY | : | |
| HIGH END SYSTEMS, INC.; | : | |
| ELEMENT TV COMPANY, LP; | : | |
| ENVIRONMENT-ONE CORPORATION; | : | |
| EXTREME TOOLS, INC.; | : | |
| FLEXSTEEL INDUSTRIES, INC.; | : | |
| FLUOROFUSION SPECIALTY CHEMICALS INC.; | : | |
| FOOTWEAR UNLIMITED, INC.; | : | |
| FRENCH CONNECTION GROUP, INC.; | : | |
| GALLERY CLASSIC, INC. D/B/A WHITE X WHITE; | : | |
| HALDEX BRAKE PRODUCTS CORPORATION; | : | |
| HALO BRANDED SOLUTIONS, INC. D/B/A HALO; | : | |
| HOFF ASSOCIATES MFG. REPS. INC. (D/B/A | : | |
| GLOBAL POINT TECHNOLOGY); | : | |
| HOPKINS MANUFACTURING CORPORATION; | : | |
| IGAS USA INC. (AND ITS AFFILIATES BMP USA | : | |
| INC., COOL MASTER PRO LLC, and COOL MASTER | : | |
| U.S.A. LLC); | : | |
| IMPERIAL MANUFACTURING GROUP INC.; | : | |
| J. CONRAD LTD.; | : | |
| KIVLAN AND COMPANY INC.; | : | |
| KRAFT TOOL COMPANY; | : | |
| LAIRD TECHNOLOGIES, INC.; | : | |
| LEVEL 5 TOOLS LLC; | : | |
| LINDFAST SOLUTIONS GROUP | : | |
| AND ITS AFFILIATED ENTITIES | : | |

1

LINDSTROM LLC, STELFAST INC., AND                              :
MEGA LLC;                                                       :
LITTLE RAPIDS CORPORATION;                                      :
M A SILVA CORKS USA LLC;                                        :
MARSHALL EXCELSIOR CO.;                                         :
MICHAELS STORES, INC.                                           :
(A DELAWARE COMPANY) (AND ITS AFFILIATES                        :
MICHAELS STORES PROCUREMENT CO. INC.                            :
(A DELAWARE COMPANY), ARTISTREE, INC. (A                        :
DELAWARE COMPANY), and LAMRITE WEST INC.                        :
(AN OHIO COMPANY));                                             :
MIDWEST QUALITY GLOVES, INC. D/B/A                              :
MIDWEST GLOVES & GEAR;                                          :
MODUS LIGHT, LLC;                                               :
MUELLER ELECTRIC COMPANY;                                       :
N.R. WINDOWS, INC.;                                             :
PCC SPECIALTY PRODUCTS, INC. D/B/A                              :
REED-RICO;                                                      :
PHARM-RX CHEMICAL CORP.;                                        :
PHILLIPS AND TEMRO INDUSTRIES, INC.;                            :
PRESENCE FROM INNOVATION, LLC;                                  :
PRIMESOURCE BUILDING PRODUCTS, INC.;                            :
RALPH FRIEDLAND & BROTHERS, INC.;                               :
THE RAYMOND CORPORATION;                                        :
RAYMOND-MUSCATINE INC.;                                         :
REFLECTION WINDOW COMPANY, LLC;                                 :
RICHWOOD IMPORTS, INC.;                                         :
THE SCOULAR COMPANY D/B/A                                       :
THE SCOULAR CO. – MINNEAPOLIS;                                  :
SHC HOLDINGS LLC D/B/A                                          :
SPECIALTY HOUSE OF CREATION;                                    :
SM PRODUCTS LLC;                                                :
SMIRK'S LTD.;                                                   :
SOLENIS LLC;                                                    :
SPRINGFIELD ALUMINUM COMPANY, INC. D/B/A                        :
SPRINGFIELD MARINE COMPANY, INC.;                               :
SUNRISE IDENTITY, LLC;                                          :
TECHNICAL MATERIALS INC.;                                       :
TOP FLIGHT, INC.;                                               :
TRICORBRAUN;                                                    :
TUFFSTUFF FITNESS INTERNATIONAL INC.;                           :
TVH PARTS CO.;                                                  :
TYTAN INTERNATIONAL, LLC;                                       :
UNITED GLASS & CERAMICS D/B/A                                   :
INTERNATIONAL GLASS & CERAMICS;                                 :
VENTANA DBS, LLC; AND                                           :

WRWP, LLC;                                                    :

                              Plaintiffs,       :

                                           :

                              v.                :

                                           :

UNITED STATES OF AMERICA;                                     :

OFFICE OF THE UNITED STATES TRADE                            :

REPRESENTATIVE; ROBERT E. LIGHTHIZER, U.S.                   :

TRADE REPRESENTATIVE; U.S. CUSTOMS &                         :

BORDER PROTECTION; MARK A. MORGAN, U.S.                      :

CUSTOMS & BORDER PROTECTION ACTING                           :

COMMISSIONER,                                                :

                                         :

                                         :

                              Defendants.        :

_____ :

## **COMPLAINT**

Plaintiffs herein listed,

- 3A Composites USA, Inc.
- Affordable Furniture Mfg. Co., Inc.
- All Coverings Evolutions
- Axis Enterprises, Inc.
- Bellofram Corp. d/b/a Marsh Bellofram
- Blizzard Lighting, LLC
- Cactus Wellhead LLC
- CLAM Corporation
- Clore Automotive, LLC
- Collins Co., Ltd. d/b/a Quality Craft
- Concentric International
- Creedon Technologies USA LLC
- Designed Metal Connections, Inc. d/b/a Permaswage
- DNJ Engine Components, Inc.
- E. Gluck Corporation
- Electronic Theatre Controls Inc. (ETC) and its subsidiary High-End Systems, Inc.
- Element TV Company, LP
- Environment-One Corporation
- Extreme Tools, Inc.
- FluoroFusion Specialty Chemicals Inc.
- Flexsteel Industries, Inc.
- Footwear Unlimited, Inc.
- French Connection Group, Inc.

- Gallery Classic, Inc. d/b/a White x White
- Haldex Brake Products Corporation
- HALO Branded Solutions, Inc. d/b/a HALO
- Hoff Associates Mfg. Reps. Inc. d/b/a Global Point Technology
- Hopkins Manufacturing Corporation
- IGas USA Inc. (and its affiliates BMP USA Inc., Cool Master Pro LLC, and Cool Master U.S.A. LLC)
- Imperial Manufacturing Group Inc.
- J. Conrad Ltd.
- Kivlan and Company Inc.
- Kraft Tool Company
- Laird Technologies, Inc.
- Level 5 Tools LLC
- LindFast Solutions Group and its affiliated entities Lindstrom LLC, Stelfast Inc., and Mega LLC
- Little Rapids Corporation
- M A Silva Corks USA LLC
- Marshall Excelsior Co.
- Michaels Stores, Inc. (A Delaware Company) (and its affiliates Michaels Stores Procurement Co. Inc. (A Delaware Company), Artistree, Inc. (A Delaware Company), and Lamrite West Inc. (An Ohio Company))
- Midwest Quality Gloves, Inc. d/b/a Midwest Gloves & Gear
- Modus Light, LLC
- Mueller Electric Company
- N.R. Windows, Inc.
- PCC Specialty Products, Inc. d/b/a Reed-Rico
- Pharm-Rx Chemical Corp.
- Phillips and Temro Industries, Inc.
- Presence From Innovation, LLC
- PrimeSource Building Products, Inc.
- Ralph Friedland & Brothers, Inc.
- The Raymond Corporation
- Raymond-Muscatine Inc.
- Reflection Window Company, LLC
- Richwood Imports, Inc.
- The Scoular Company d/b/a The Scoular Co. – Minneapolis
- SHC Holdings LLC d/b/a Specialty House of Creation
- SM Products LLC
- Smirk's Ltd.
- Solenis LLC
- Springfield Aluminum Company, Inc. d/b/a Springfield Marine Company, Inc.
- Sunrise Identity, LLC
- Technical Materials Inc.

- Top Flight, Inc.
- TricorBraun
- TuffStuff Fitness International Inc.
- TVH Parts Co.
- Tytan International, LLC
- United Glass & Ceramics d/b/a International Glass & Ceramics
- Ventana DBS, LLC
- WRWP, LLC

by and through their attorneys, allege and state as follows:

1.      This action concerns Defendants' unlawful and unsupported increase and modification of the Section 301 tariffs affecting over $500 billion in imports from the People's Republic of China.  This Complaint focuses on Defendants' unlawful imposition of tariffs on products covered by so-called List 3 and List 4.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018); *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564 (May 17, 2019).

2.      The Trade Act of 1974 ("Trade Act") does not confer unfettered authority on Defendants to pursue repeated and extended tariff increases for an unspecified amount of time by any means.  The Office of the United States Trade Representative ("USTR") is bound by the authority delegated under Section 301 of the Trade Act (19 U.S.C. § 2411) when it conducts an investigation into China's unfair policies and practices and takes appropriate action.  Section 304 of the Trade Act (19 U.S.C. § 2414) requires USTR to determine what action to take, if any, within 12 months *after* initiation of that investigation.  USTR failed to issue List 3 (or subsequent List 4) within that statutorily prescribed window of time.

3.      Congress has the exclusive "power to lay and collect {t}axes, {d}uties, {i}mposts and {e}xcises" and "to regulate Commerce with foreign nations." U.S. Const. Art. I § 8, Cls. 1, 3.  In Section 301, Congress delegated authority to USTR to take certain actions to address three types of foreign government conduct: (1) a violation that denies U.S. rights under a trade agreement, (2) an "unjustifiable" action that "burdens or restricts" U.S. commerce, and (3) an "unreasonable" or "discriminatory" action that "burdens or restricts" U.S. commerce. 19 U.S.C. § 2411(a)(1)(B), (b)(1).  Section 307 of the Trade Act does not permit USTR to expand the imposition of tariffs to other imports from China for reasons untethered to the unfair policies and practices related to technology transfer, intellectual property, and innovation that it originally investigated under Section 301 of the Trade Act.  That authority resides exclusively with Congress and may only be exercised within the statutory standards set by the Congress. The delegated authority here does not allow for the free floating authority to increase or "modify" tariffs untethered to either the original finding or to subsequent developments.  Yet that is exactly what Defendants did here when they chose to issue List 3 and List 4 tariffs in response to China's retaliatory tariffs and other unrelated issues more than 12 months after the initial action, with no rational basis for linking Lists 3 and 4 to statutory standards.  Even if USTR has some limited authority to deem existing tariffs to be "no longer appropriate" and must be modified, it must still do so within the articulated constraints of the statute.

4.      The unlawful modification of the Section 301 tariffs that resulted in the List 3 and List 4 tariff actions also violates the Administrative Procedure Act ("APA").  Specifically, USTR (1) failed to comply with the statutory requirements for modifying a Section 301 tariff action in List 3 and List 4A, (2) failed to consider relevant factors when making its decision, and (3) failed to support its modifications with substantial evidence by not providing an explanation of why the

counter-retaliatory tariffs implemented in List 3 and List 4 were "equivalent in value" to the "increased burden" on U.S. commerce.  19 U.S.C. § 2411(a)(3).

5.      The Court should set aside Defendants' actions as *ultra vires* and otherwise contrary to law, as well as order Defendants to refund (with interest) any and all tariffs paid by Plaintiffs pursuant to List 3 and List 4A.

## **JURISDICTION**

6.      The Court possesses subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1581(i)(1)(B), which confers "exclusive jurisdiction" on the Court over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue."  28 U.S.C. § 1581(i)(1)(B).

## **PARTIES**

7.      Collectively, Plaintiffs employ over 59,000 employees in the United States and create in excess of $17.5 billion dollars in annual revenue.

a.      Plaintiff 3A Composites USA, Inc. ("3A") located in Statesville, NC, is a global market leader in core materials for sandwich constructions as well as other segments such as composite panels for high-quality facades and display applications.  Its imported products subject to Section 301 duties include aluminum sheeting and aluminum composite material panels.  3A imports products from China under HTSUS subheadings on Lists 3 and 4A.

b.      Plaintiff Affordable Furniture Mfg. Co., Inc. ("Affordable Furniture") located in Houlka, Mississippi, specializes in the manufacture of promotional upholstered furniture.  To that end, the company imports certain goods covered under Section 301

List 3 and List 4A duties including fabric upholstery kits used in the manufacture of sofas, loveseats, chairs and ottomans, as well as rolls of fabric and recliner and motion mechanisms, all of which are used in the manufacture of furniture.  Affordable Furniture imports products from China under HTSUS subheadings on Lists 3 and 4A.

      c.     Plaintiff All Coverings Evolutions ("All Coverings") is an importer and distributor of flooring products.  Its headquarters are in Texas.  All Coverings imports products from China under HTSUS subheadings on List 3.

      d.     Plaintiff Axis Enterprises, Inc. ("Axis") is a promotional products distributor involved in the distribution of a wide range of hard goods and soft goods.  The company imports a variety of gift, trade show and similar promotional products subject to List 3 and List 4A duties.  Axis imports products from China under HTSUS subheadings on Lists 3 and 4A.

      e.     Plaintiff Bellofram Corp. d/b/a Marsh Bellofram ("Marsh Bellofram") is a manufacturer of high-performance OEM, industrial and process control instrumentation. Imported goods subject to Section 301 List 3 or List 4A duties include O-rings, rubber gaskets and washers, certain articles of cast iron, forged parts, aluminum machined parts, castings, control valves, printed circuits, pressure measurement instruments and springs. Marsh Bellofram imports products from China under HTSUS subheadings on Lists 3 and 4A.

      f.     Plaintiff Blizzard Lighting, LLC ("Blizzard") is an entertainment lighting manufacturer located in Waukesha, Wisconsin.  The company was founded in 2010. Blizzard imports products from China under HTSUS subheadings on List 3.

g.      Plaintiff Cactus Wellhead LLC ("Cactus Wellhead") which is located in Houston, Texas, designs, manufactures, sells and rents a range of highly-engineered wellheads and pressure control equipment principally for onshore unconventional oil and gas wells. The goods are utilized during the drilling, completion (including fracturing) and production phases of the wells. Cactus Wellhead imports products from China under HTSUS subheadings on Lists 3 and 4A.

h.      Plaintiff CLAM Corporation ("CLAM") located in Rogers, MN, is a manufacturer and distributor of outdoor products including ice fishing shelters and accessories, apparel, utility trailers, screen tents and tackle. Goods imported by the company subject to Section 301 duties under List 3 or List 4A include ice fishing shelters and tents, trailer parts (frames and tires), outdoor apparel, screen tents and accessories for the aforementioned items. CLAM imports products from China under HTSUS subheadings on Lists 3 and 4A.

i.      Plaintiff Clore Automotive, LLC ("Clore Automotive") is an automotive parts company based in Lenexa, Kansas. Clore Automotive imports products from China under HTSUS subheadings on Lists 3 and 4A.

j.      Plaintiff Collins Co., Ltd. d/b/a Quality Craft ("Quality Craft") is an importer/distributor of flooring, wall products, tools, fire pits and fire rings and other products. Its U.S. operations are centered in Illinois and its headquarters are in British Columbia. Quality Craft imports products from China under HTSUS subheadings on Lists 3 and 4A.

k.      Plaintiff Concentric International ("Concentric International") is an importer/distributor of Agricultural and Industrial components, in Des Moines Iowa.

Concentric International imports products from China under HTSUS subheadings on Lists 3 and 4A.

l.      Plaintiff Creedon Technologies USA LLC ("Creedon") is an importer and distributor of photo frames and signage.  Its U.S. headquarters are in Minnesota.  Creedon imports products from China under HTSUS subheadings on List 4A.

m.      Based in Gardena, California, Plaintiff Designed Metal Connections, Inc. d/b/a Permaswage ("Permaswage") is a manufacturer of a wide assortment of fluid fittings configurations made of aluminum, steel, stainless steel, titanium, and brass, suitable for commercial and military aerospace applications.  Permaswage imports products from China under HTSUS subheadings on Lists 3 and 4A.

n.      Plaintiff DNJ Engine Components, Inc. ("DNJ"), located in Chatsworth, California, is an aftermarket distributor of engine parts.  Among other parts, its imported goods subject to Section 301 List 3 duties include pistons, water pumps, camshafts, valves, engine bearings, timing chain sets, timing tensioners, gaskets, fan clutches, variable timing solenoids , intake manifolds, variable timing gears, and motor mounts. DNJ imports products from China under HTSUS subheadings on List 3.

o.      Plaintiff E. Gluck Corporation ("E. Gluck") is an importer and distributor of watches.  Its US headquarters are in New York.  E. Gluck imports products from China under HTSUS subheadings on Lists 3 and 4A.

p.      Plaintiff Electronic Theatre Controls, Inc ("ETC") and its subsidiary High-End Systems, Inc., headquartered in Middleton, WI, are global leaders in the manufacturing of lighting and rigging technology.  Its products can be found in large and small venues worldwide, such as theatres, churches, restaurants, hotels, schools,

television studios, casinos, theme parks and opera houses. ETC and its subsidiary import products from China under HTSUS subheadings on List 3.

q.     Plaintiff Element TV Company, LP ("Element") manufactures and markets televisions, monitors, sound bars, appliances and other consumer electronics throughout the United States. A portion of the company's products are assembled in the United States. Element imports products from China under HTSUS subheadings on Lists 3 and 4A.

r.     Plaintiff Environment-One Corporation ("Environment-One") is a manufacturer of complex metal parts and industrial products and systems for the disposal of residential sanitary waste and Utility Systems for the protection and performance optimization of electric utility assets based in Niskayuna, New York. Environment-One imports products from China under HTSUS subheadings on Lists 3 and 4A.

s.     Plaintiff Extreme Tools, Inc. ("Extreme Tools") is a manufacturer, importer, and distributor of toolboxes. Its headquarters are in Illinois. Extreme Tools imports products from China under HTSUS subheadings on List 3.

t.     Plaintiff Flexsteel Industries, Inc. ("Flexsteel") has been manufacturing and distributing furniture in the United States for 126 years, since 1893. The company imports a variety of furniture parts and fabrics used to manufacture finished goods. Flexsteel imports products from China under HTSUS subheadings on Lists 3 and 4A.

u.     Plaintiff, FluoroFusion Specialty Chemicals Inc., ("FluoroFusion") is an EPA certified refrigerant reclaimer and producer of complex refrigerant blends for the U.S. air conditioning and refrigeration industry, based out of Clayton, North Carolina. FluoroFusion imports products from China under HTSUS subheadings on List 3.

v.      Plaintiff Footwear Unlimited, Inc. ("Footwear Unlimited") located in Fenton, Missouri, is a designer and wholesaler of women's branded footwear.  To that end the company imports certain footwear subject to Section 301 List 4A duties. Footwear Unlimited imports products from China under HTSUS subheadings on Lists 3 and 4A.

w.      Plaintiff French Connection Group, Inc. ("French Connection"), with U.S. headquarters in Hollis, New York, is a distributor of wearing apparel for women and men.  The company's women's man-made fiber sweaters are subject to List 4A duties. French Connection imports products from China under HTSUS subheadings on List 4A.

x.      Plaintiff Gallery Classic, Inc. (d/b/a White x White) ("White x White") is a small, family-owned business located in Topeka, Kansas that designs, imports and distributes unique furniture and home décor products, including a variety of glass-front wooden cabinets.  White x White imports products from China under HTSUS subheadings on List 3.

y.      Plaintiff Haldex Brake Products Corporation ("Haldex") provides innovative brake solutions to the global commercial vehicle industry, with a focus on enhanced safety, environment and vehicle dynamics.  The company's imported goods subject to List 3 or List 4A duties include a range of components for commercial vehicles; for example, gears, valves, disk brakes, brake chambers and similar goods. Haldex imports products from China under HTSUS subheadings on Lists 3 and 4.

z.      Plaintiff HALO Branded Solutions, Inc. d/b/a HALO ("HALO") located in Oakbrook Terrace Illinois, is a global leader in the distribution of promotional products and employee recognition solutions.  The company imports a variety of gift, trade show

and similar promotional products subject to List 3 and List 4A duties.  HALO imports products from China under HTSUS subheadings on Lists 3 and 4.

aa.     Plaintiff Hoff Associates Mfg. Reps. Inc. d/b/a Global Point Technology ("Hoff Associates") was incorporated in 1974 and began as a manufacturers' representative business.  Over the years it began taking title to the components and reselling them.  It added design, engineering, warehouse and its own manufacturing capabilities.  Its Farmington NY location provides a number of functions, including warehousing, sales, engineering, finance, general administration support and low volume manufacturing.  Hoff Associates imports products from China under HTSUS subheadings on Lists 3 and 4A.

bb.     Plaintiff Hopkins Manufacturing Corporation ("Hopkins Manufacturing") is a global manufacturer, marketer and distributor of specialized towing products and functional accessories for the automotive and recreational vehicle aftermarkets.  Hopkins Manufacturing imports products from China under HTSUS subheadings on Lists 3 and 4A.

cc.     Plaintiff IGAS USA Inc., is a Florida company that blends and sells refrigerant gases in the United States and is affiliated with BMP USA Inc., Cool Master U.S.A. LLC, and Cool Master Pro LLC, all of whom sell HVAC tools and components. IGas USA and its affiliated companies BMP USA Inc., Cool Master U.S.A. LLC, and Cool Master Pro LLC all import products from China under HTSUS subheadings on List 3 and List 4A.

dd.     Plaintiff Imperial Manufacturing Group Inc. ("Imperial") is a manufacturer of air distribution and building products in Canada and the United States. Imperial imports products from China under HTSUS subheadings on Lists 3 and 4A.

ee.     Plaintiff J. Conrad Ltd. ("J. Conrad") is an importer and distributor of steel and wire products.  Its headquarters are in Maryland.  J. Conrad imports products from China under HTSUS subheadings on Lists 3 and 4A.

ff.     Plaintiff Kivlan and Company Inc. ("Kivlan") is a global trading company that was established in 1988 in Pennsylvania and is currently located in Clayton, North Carolina.  Kivlan imports refrigeration products for production and resale into the U.S. air conditioning and refrigeration markets.  Kivlan was the importer of record on behalf of FluoroFusion until early 2019.  Kivlan imports products from China under HTSUS subheadings on List 3.

gg.     Plaintiff Kraft Tool Company ("Kraft Tool") is located in Shawnee, Kansas and manufactures quality tools for the concrete, masonry, plaster, drywall, & tile professional.  Kraft Tool imports products from China under HTSUS subheadings on List 4A.

hh.     Plaintiff Laird Technologies ("Laird Technologies") is a manufacturer of advanced electronics based in Chesterfield, Missouri.  Laird Technologies imports products from China under HTSUS subheadings on List 4A.

ii.     Plaintiff Level 5 Tools LLC ("Level 5) is a distributor of drywall tools, which includes automatic taping and hand tools.  Level 5 imports products from China under HTSUS subheadings on Lists 3 and 4A.

jj.    Plaintiff LindFast Solutions Group and its affiliate Lindstrom LLC ("Lindstrom") has been a leading fastener solutions company.  Lindstrom imports fasteners from global sources and repackages it to customer specifications and need.  Its affiliated company Mega LLC is an importer of unthreaded fasteners which it then fabricates into a finished good.  The products imported by Mega can ultimately be found in bridges, the mining industry, heavy truck, agricultural, and energy sectors.  Plaintiff LindFast Solutions Group and its affiliate Stelfast Inc. ("Stelfast") has been an industry leader in fasteners for many years.  Stelfast began its operations in 1972 as a small and progressive manufacturer of industrial gears and screw machine products.  Stelfast was incorporated in 1976 and established operations in Cleveland, Ohio USA and Toronto, Ontario Canada.  Today, Stelfast Inc. is a leading importer; stocking master distributor of fasteners and specialty parts from Asia, Europe, and South America (from standard commercial items to special parts per print); and manufacturer of truck and specialty fasteners.  Lindstrom and Stelfast import products from China under HTSUS subheadings on Lists 3 and 4A.

kk.    Plaintiff Little Rapids Corporation ("Little Rapids") develops, manufactures, and markets products that promote safety and sanitation within the medical and beauty settings, and specialty papers for a variety of end use applications, based in Green Bay, Wisconsin.  Little Rapids imports products from China under HTSUS subheadings on Lists 3 and 4A.

ll.    Plaintiff M A Silva Corks USA LLC ("M A Silva") is an importer and distributor of glass containers and cork products mainly for the wine industry.  Its

headquarters are in California.  M A Silva imports products from China under HTSUS subheadings on List 3.

      mm.    Plaintiff Marshall Excelsior Co. ("Marshall Excelsior") is a manufacturer of top quality and competitively priced LPG & NH3 equipment that is leading the industry in innovation and low emission products.  Marshall Excelsior imports products from China under HTSUS subheadings on Lists 3 and 4A.

      nn.    Plaintiff Michaels Stores, Inc., its parent company The Michaels Companies, Inc., and its subsidiaries Michaels Stores Procurement Co. Inc.; Artistree, Inc.; and Lamrite West Inc. ("Michaels Stores") is the largest arts and crafts specialty retailer in North America providing materials, project ideas and education for creative activities under the Michaels retail brand.  It also operates a vertically-integrated custom framing business under the Artistree brand name.  As of August 1, 2020, Michaels Stores operated 1,275 stores.  Michaels Stores imports products from China under HTSUS subheadings on Lists 3 and 4A.

      oo.    Plaintiff Midwest Quality Gloves, Inc. d/b/a Midwest Gloves & Gear ("Midwest Quality Gloves") is a Chillicothe, Missouri based manufacturing company that markets a full line of premium quality work gloves including leathers, gripping, fabric, and performance gloves.  It imports products from China under HTSUS subheadings on Lists 3 and 4A.

      pp.    Plaintiff Modus Light, LLC ("Modus Light") is a global manufacturing and supply chain management provider in Overland Park, Kansas.  Modus Light imports products from China under HTSUS subheadings on Lists 3 and 4A.

qq.    Plaintiff Mueller Electric Company ("Mueller") is located in Akron, Ohio. The company invented the Alligator clip and manufactures and distributes a variety of clips, connectors, cables, cable lugs, test leads and temporary protective grounding equipment as well as certain test and measurement accessories.  Its imported goods subject to Section 301 List 3 duties include certain stamped parts as well as completed cable assemblies.  Mueller Imports products from China under HTSUS subheadings on Lists 3 and 4A

rr.    Plaintiff N.R. Windows, Inc. ("N.R. Windows") was established in March 1990, as a Florida Corporation.  It is engaged in subcontracting the glass/glazing trade for general contractors on a variety of diversified construction projects such from General Contractors on building construction projects such as airports, hotels, multi-story office and residential condominiums.  N.R. Windows imports products from China under HTSUS subheadings on Lists 3 and 4A.

ss.    Plaintiff PCC Specialty Products, Inc. d/b/a Reed-Rico ("Reed-Rico") is a manufacturer and supplier of tooling solutions for the fastener industry based in Auburn, Massachusetts.  It specializes in aerospace, automotive, energy, medical and general industries.  Reed-Rico imports products from China under HTSUS subheadings on Lists 3 and 4A

tt.    Plaintiff Pharm-Rx Chemical Corp. ("Pharm-Rx") is an importer and distributor of ingredients supplied to pharmaceutical, nutritional supplement, and related industries based in Saddle Brook, New Jersey.  Pharm-Rx imports products from China under HTSUS subheadings on Lists 3 and 4A.

uu.     Phillips and Temro Industries ("PTI") is an industry leading Tier 1 supplier of electrical and cold weather starting products to automotive, truck, and off-road equipment makers.  PTI sells to the producers of all major brands of cars, trucks, and off-road equipment in North America.  PTI imports products from China under HTSUS subheadings on List 3.

vv.     Plaintiff Presence From Innovation, LLC ("PFI") is a manufacturer and distributor of retail store displays and fixtures.  PFI imports products from China under HTSUS subheadings on Lists 3 and 4A.

ww.     Plaintiff PrimeSource Building Products, Inc. ("PrimeSource") distributes construction fasteners and non-lumber building products for new residential construction, home improvement, remodeling, and repair work in the United States.  PrimeSource imports products from China under HTSUS subheadings on Lists 3 and 4A.

xx.     Plaintiff Ralph Friedland & Brothers, Inc. ("Ralph Friedland") is an importer/distributor of window shades and related products.  Its headquarters are in New Jersey.  Ralph Friedland imports products from China under HTSUS subheadings on Lists 3 and 4A.

yy.     Plaintiff The Raymond Corporation ("The Raymond Corporation") is a provider of material handling products, intelligent intralogistics solutions, warehouse and distribution operations.  The Raymond Corporation imports products from China under HTSUS subheadings on Lists 3 and 4A.

zz.     Plaintiff Raymond-Muscatine, Inc. ("Raymond-Muscatine") designs, manufactures, and distributes material handling machinery and is located in Muscatine,

Iowa.  Raymond-Muscatine imports products from China under HTSUS subheadings on Lists 3 and 4A.

aaa.    Plaintiff Reflection Window Company, LLC ("Reflection") located in Chicago, Illinois, is an architectural building enclosure company specializing in the engineering, pre-construction, and project management of façade construction.  In that regard, the company imports and distributes fully complete custom designed window wall systems subject to Section 301 List 4A duties, each window wall system unique to the size, dimensions and modulation of the particular project.  Reflection imports products from China under HTSUS subheadings on List 4A.

bbb.    Plaintiff Richwood Imports, Inc. ("Richwood") is an importer/distributor of furniture products.  Its headquarters are in California.  Richwood imports products from China under HTSUS subheadings on List 3.

ccc.    Plaintiff The Scoular Company ("Scoular") is a corporation based in Omaha, Nebraska dedicated to the buying, selling, storage, handling, transportation, and processing of grain and food ingredients.  Scoular imports products from China under HTSUS subheadings on Lists 3 and 4A.

ddd.    Plaintiff SHC Holdings LLC d/b/a Specialty House of Creation ("SHC") provides marketing and program development expertise to the casino industry.  SHC imports products from China under HTSUS subheadings on List 3.

eee.    Plaintiff SM Products LLC ("SM Products") is a manufacturer and distributor of durable custom tool products designed for professional craftsmen.  SM Products imports products from China under HTSUS subheadings on List 3.

fff.   Plaintiff Smirk's Ltd. ("Smirk's") is an importer of dried fruits, nuts, seeds, and food ingredients based in Fort Morgan, Colorado.  SHC imports products from China under HTSUS subheadings on List 3.

ggg.   Plaintiff Solenis LLC ("Solenis") is a manufacturer of specialty chemicals for the pulp, paper, oil and gas, chemical processing, mining, biorefining, power and municipal markets headquartered in Wilmington, Delaware.  Solenis imports products from China under HTSUS subheadings on List 3.

hhh.   Plaintiff Springfield Aluminum Company, Inc. d/b/a Springfield Marine Company, Inc. ("Springfield") is an importer and manufacturer of seats and seat fabrications as well as a variety of other parts for boats and recreational vehicles.  Its imported goods subject to Section 301 List 3 and List 4A duties include a variety of seats, plastic injected/blow molded frames and fully upholstered seats and cushions. Springfield imports products from China under HTSUS subheadings on Lists 3 and 4A.

iii.   Plaintiff Sunrise Identity, LLC ("Sunrise") is a full-service marketing company that helps medium to large size companies and organizations extend their brand through a wide range of promotional marketing solutions, including the distribution of a wide range of hard goods and soft goods.  The company imports a variety of gift, trade show and similar promotional products subject to List 3 and List 4A duties.  Sunrise imports products from China under HTSUS subheadings on Lists 3 and 4A.

jjj.   Plaintiff Technical Materials Inc. ("Technical Materials") is a small privately owned company that sells high temperature resistant materials such as steel, aluminum and glass that are used in furnaces.  Technical Materials imports products from China under HTSUS subheadings on List 3.

kkk.    Plaintiff Top Flight, Inc. ("Top Flight") is a manufacturer, importer, and distributor of notebooks, journals, legal pads and other paper products.  Its headquarters are in Tennessee.  Top Flight imports products from China under HTSUS subheadings on Lists 3 and 4A.

lll.    Plaintiff TricorBraun is a major importer and distributor of packaging merchandise.  It is headquartered in St. Louis, Missouri. TricorBraun imports products from China under HTSUS subheadings on Lists 3 and 4A.

mmm.  Plaintiff TuffStuff Fitness International, Inc. ("TuffStuff") engineers and manufactures strength equipment for home gyms and commercial fitness facilities.  SHC imports products from China under HTSUS subheadings on Lists 3 and 4A.

nnn.    Plaintiff TVH Parts Co. ("TVH") is a leading provider of replacement parts and accessories for the material handling and industrial equipment industry.  In that regard the company imports products for the manufacturing, distribution, service and repair of Material Handling Equipment, which are subject to Section 301 List 3 and List 4A duties.  TVH imports products from China under HTSUS subheadings on Lists 3 and 4A.

ooo.    Plaintiff Tytan International, LLC ("Tytan") is a national distributor and importer of industrial goods.  Tytan imports products from China under HTSUS subheadings on Lists 3 and 4A.

ppp.    Plaintiff United Glass & Ceramics d/b/a International Glass & Ceramics ("United Glass") is an importer and distributor of glass and other containers for the food and beverage industry.  Its headquarters are in California.  United Glass imports products from China under HTSUS subheadings on List 3.

qqq.     Plaintiff Ventana DBS, LLC, ("Ventana") designs, supplies, and installs high-performing curtain wall and window wall façade systems, and serves a diverse cross-section of the construction marketplace.  Ventana's curtain wall and window wall façade systems are used in a broad range of U.S. construction projects, including projects related to improving our nation's healthcare facilities such as hospitals.  Ventana imports products from China under HTSUS subheadings on List 4A.

rrr.     Plaintiff WRWP, LLC ("WRWP") is a leading manufacturer and supplier of wire harnesses, cables, and custom components based in Cleveland, Ohio.  WRWP imports products from China under HTSUS subheadings on Lists 3 and 4A.

8.     Defendant United States of America received the disputed tariffs and is the statutory defendant under 5 U.S.C. § 702 and 28 U.S.C. § 1581(i)(1)(B).

9.     The Office of the USTR is an executive agency of the United States charged with investigating a foreign country's trade practices under Section 301 of the Trade Act and implementing "appropriate" responses, subject to the direction of the President.  USTR conducted the Section 301 investigation at issue and made numerous decisions regarding List 3 and List 4A.

10.     Ambassador Robert Lighthizer currently holds the position of USTR and serves as the director of the Office of the USTR.  In these capacities, he made numerous decisions regarding List 3 and List 4A.

11.     Defendant U.S. Customs & Border Protection ("CBP") is the agency that collects tariffs on imports.  CBP collected payments made by Plaintiffs to account for the tariffs imposed by USTR under List 3 and List 4A.

12.     Defendant Mark A. Morgan is the Acting Commissioner of CBP.  In this capacity,

22

he oversees CBP's collection of tariffs paid by Plaintiffs under List 3 and List 4A.

## STANDING

13.     Tariffs imposed by Defendants pursuant to List 3 and List 4A adversely affected and aggrieved the Plaintiffs identified in ¶ 7 because they were required to pay these unlawful tariffs.  The Plaintiffs identified in ¶ 7 have standing to sue because they are "adversely affected or aggrieved by agency action within the meaning of" the APA.  5 U.S.C. § 702; *see* 28 U.S.C. § 2631(i) ("Any civil action of which the Court of International Trade has jurisdiction . . . may be commenced in the court by any person adversely affected or aggrieved by agency action within the meaning of Section 702 of title 5.").

## TIMELINESS OF THE ACTION

14.     A plaintiff must commence an action under 28 U.S.C. § 1581(i)(1)(B) "within two years after the cause of action first accrues."  28 U.S.C. § 2636(i).

15.     The instant action contests action taken by Defendants that resulted in List 3, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018), and List 4, *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564 (May 17, 2019).  Plaintiffs' claims, under List 3, accrued at the earliest on September 21, 2018, when USTR published notice of List 3 in the *Federal Register*, *id.*, and Plaintiff's claims, under List 4, accrued at the earliest on May 17, 2019, when USTR published notice of List 4 in the *Federal Register*, *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed.

Reg. 22,564 (May 17, 2019).  Plaintiffs have therefore timely filed this action.

## RELEVANT LAW

16.     Section 301 of the Trade Act authorizes USTR to investigate a foreign country's trade practices.  19 U.S.C. § 2411(b).  If the investigation reveals an "unreasonable or discriminatory" practice, USTR may take "appropriate" action, such as imposing tariffs on imports from the country that administered the unfair practice.  19 U.S.C. § 2411(b), (c)(1)(B).

17.     Section 304 of the Trade Act requires USTR to determine what action to take, if any, within 12 months after the initiation of the underlying investigation.  19 U.S.C. § 2414(a)(1)(B), (2)(B).

18.     Section 307 of the Trade Act (in pertinent part) allows USTR to "modify or terminate" an action taken pursuant to Section 301 of the Trade Act either when the "burden or restriction on United States commerce" imposed by the investigated foreign country's practice has "increased or decreased" or when the action "is no longer appropriate."  19 U.S.C. § 2417(a)(1)(B), (C).

## PROCEDURAL HISTORY

### I.     USTR's Investigation

19.     The current U.S. actions regarding Lists 3 and 4 grew from a specific dispute.  On August 14, 2017, President Trump directed Ambassador Lighthizer to consider initiating a targeted investigation pursuant to Section 301(b) of the Trade Act concerning China's laws, policies, practices, and actions related to intellectual property, innovation, and technology. *Addressing China's Laws, Policies, Practices, and Actions Related to Intellectual Property, Innovation, and Technology*, 82 Fed. Reg. 39,007 (Aug. 17, 2017).  According to the President, certain Chinese "laws, policies, practices, and actions" on intellectual property, innovation, and

technology "may inhibit United States exports, deprive United States citizens of fair remuneration for their innovations, divert American jobs to workers in China, contribute to our trade deficit with China, and otherwise undermine American manufacturing, services, and innovation." *Id.*

20.    Four days later, on August 18, 2017, USTR formally initiated an investigation into "whether acts, policies, and practices of the Government of China related to technology transfer, intellectual property, and innovation are actionable under {Section 301(b) of} the Trade Act." *Initiation of Section 301 Investigation; Hearing; and Request for Public Comments: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 82 Fed. Reg. 40,213 (Aug. 24, 2017).

21.    Seven months later, on March 22, 2018, USTR released a report announcing the results of its investigation.  Office of the United States Trade Representative, *Findings of the Investigation Into China's Acts, Policies, And Practices Related to Technology Transfer, Intellectual Property, and Innovation Under Section 301 of The Trade Act of 1974* (Mar. 22, 2018), https://ustr.gov/sites/default/files/Section%20301%20FINAL.PDF.  USTR found that certain "acts, policies, and practices of the Chinese government related to technology transfer, intellectual property, and innovation are unreasonable or discriminatory and burden or restrict U.S. commerce." *Id.* at 17.  USTR based its findings on (1) China's use of foreign ownership restrictions, foreign investment restrictions, and administrative licensing and approval processes to pressure technology transfers from U.S. to Chinese companies, *id.* at 45; (2) China's use of licensing processes to transfer technologies from U.S. to Chinese companies on terms that favor Chinese recipients, *id.* at 48; (3) China's facilitation of systematic investment in, and acquisition of, U.S. companies and assets by Chinese entities to obtain technologies and intellectual property

for purposes of large-scale technology transfer, *id.* at 147; and (4) China's cyber intrusions into U.S. computer networks to gain access to valuable business information, *id.* at 171.  In its official report, USTR failed to quantify the burden or restriction imposed on U.S. commerce by the investigated practices.

22.    On the same date, USTR separately published a "Fact Sheet" stating that "{a}n interagency team of subject matter experts and economists estimates that China's policies result in harm to the U.S. economy of at least $50 billion per year."  Office of the United States Trade Representative, *Section 301 Fact Sheet* (Mar. 22, 2018), https://ustr.gov/about-us/policy-offices/press-office/fact-sheets/2018/march/section-301-fact-sheet.  USTR also indicated that, consistent with a directive from President Trump, it would "propose additional tariffs" of 25% *ad valorem* "on certain products of China, with an annual trade value commensurate with the harm caused to the U.S. economy resulting from China's unfair policies."  *Id.*; *see Actions by the United States Related to the Section 301 Investigation of China's Laws, Policies, Practices, or Actions Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 13,099 (Mar. 27, 2018) (President Trump's directive).

**II.    List 1 and List 2**

23.    Between April and August 2018 (i.e., within the 12-month statutory deadline from the initiation of the investigation in August 2017, *see* 19 U.S.C. § 2414(a)(2)(B)), Defendants undertook a series of actions to remedy the estimated harm to the U.S. economy caused by the investigated unfair practices, ultimately imposing tariffs on imports from China covered by the so-called Lists 1 and 2.

24.    On April 6, 2018, USTR published notice of its intent to impose "an additional duty of 25 percent on a list of products of Chinese origin."  *Notice of Determination and Request*

*for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301:*
*China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and*
*Innovation*, 83 Fed. Reg. 14,906, 14,907 (Apr. 6, 2018).  The products on the proposed list
covered 1,333 tariff subheadings with a total value of "approximately $50 billion in terms of
estimated annual trade value for calendar year 2018."  83 Fed. Reg. at 14,907. USTR explained
that it chose $50 billion because that amount was "commensurate with an economic analysis of
the harm caused by China's unreasonable technology transfer policies to the U.S. economy, as
covered by USTR's Section 301 investigation."  Office of the United States Trade
Representative, *Under Section 301 Action, USTR Releases Proposed Tariff List on Chinese*
*Products* (Apr. 3, 2018), http://ustr.gov/about-us/policy-offices/press-office/press-
releases/2018/april/under-section-301-action-ustr.

25.     On June 20, 2018, USTR published notice of its final list of products subject to an
additional tariff of 25% *ad valorem*, a list commonly known as "List 1."  *Notice of Action and*
*Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section*
*301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual*
*Property, and Innovation*, 83 Fed. Reg. 28,710 (June 20, 2018).  USTR explained that it had
"narrow{ed} the proposed list in the April 6, 2018 notice to 818 tariff subheadings, with an
approximate annual trade value of $34 billion."  *Id.* at 28,711.

26.     At the same time that it finalized List 1, USTR announced that it intended to
impose a 25% *ad valorem* tariff on a second proposed list of Chinese products in order to
"maintain the effectiveness of {the} $50 billion trade action" grounded in its Section 301
investigation.  *Id.* at 28,712.  USTR announced a proposed "List 2" covering 284 tariff
subheadings with "an approximate annual trade value of $16 billion."  *Id.* at 28,711–12.

27

27.     On August 16, 2018, USTR published notice of the final list of products subject to an additional tariff of 25% *ad valorem* in List 2, comprising "279 tariff subheadings" whose "annual trade value . . . remains approximately $16 billion."  *Notice of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 40,823, 40,823–24 (Aug. 16, 2018).

**III.     List 3 and List 4**

28.     Tariff actions, taken by Defendants under Section 301—either as an original retaliation against a foreign unfair practice, or as an increase or modification of previously-instituted tariffs due to subsequent events—must comply with the statute.  Only Congress has the "power to lay and collect {t}axes, {d}uties, {i}mposts and {e}xcises" and "to regulate Commerce with foreign nations." U.S. Const. Art. I § 8, Cls. 1, 3.  In Section 301, Congress delegated authority to USTR to take certain actions to address "unreasonable" or "discriminatory" action by a foreign government that "burdens or restricts" U.S. commerce.  19 U.S.C. § 2411 (b)(1).  This statutory authority is found in 19 U.S.C. §2411(a)(3) which provides that: "Any action taken under paragraph (1) to eliminate an act, policy, or practice shall be devised so as to affect goods or services of the foreign country in an amount that is equivalent in value to the burden or restriction being imposed by that country on United States commerce." (emphasis added).  Thus, any action that goes beyond an amount that is equivalent in value to the burden or restriction is ultra vires agency action or otherwise contrary to law.

29.     USTR determined that the value of the burdens or restrictions being imposed by China due to issues regarding technology transfer, intellectual property, and innovation was $50 billion for calendar year 2018.  *Notice of Determination and Request for Public Comment Concerning Proposed Determination of Action Pursuant to Section 301: China's Acts, Policies,*

*and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed.
Reg. 14,906, 14,907 (Apr. 6, 2018).  USTR offset that $50 billion in "burden" by issuing List 1
tariffs on $34 billion in Chinese goods and List 2 tariffs on $34 billion in Chinese goods.  *Notice
of Action and Request for Public Comment Concerning Proposed Determination of Action
Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer,
Intellectual Property, and Innovation,* 83 Fed. Reg. 28,710, 28,711 (June 20, 2018).  The
Government of China then retaliated against the U.S. tariffs by imposing increased tariffs on $50
billion of U.S. goods.  *Request for Comments Concerning Proposed Modification of Action
Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer,
Intellectual Property, and Innovation*, 83 Fed. Reg 33,608 (July 17, 2018).  In response, USTR
counter-retaliated with additional tariffs on goods via List 3, with the value of such goods
amounting to $200 billion in trade.  *Id.*; *Notice of Modification of Section 301 Action: China's
Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and
Innovation*, 83 Fed. Reg. 47,974 (Sept. 21, 2018).  USTR further counter-retaliated with tariffs
on an additional $300 billion in goods traded in List 4 which was further modified as List 4A.
*Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to
Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20,
2019); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices
Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821,
45,821 (Aug. 30, 2019).

30.     The United States provided no reasoning as to why the retaliation on imports of
Chinese goods amounting to a total value of $500 billion in trade was consistent with the legal
requirement that they be "equivalent in value to the burden or restriction being imposed."  On its

face, the retaliation taken by USTR and the President under Lists 3 and 4A appears to be disproportionate to the burden or restriction that the statute authorizes to remedy.

**A.**     **List 3**

31.     In its notice for List 3, USTR confirmed that it had relied on China's decision to impose "retaliatory tariffs" as the basis for its proposed action. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,609 (July 17, 2018) (asserting as justification "China's response to the $50 billion action announced in the investigation and its refusal to change its acts, policies, and practices"). USTR explicitly tied the $200 billion in its proposed action to the level of retaliatory tariffs imposed by China on U.S. imports, noting that "action at this level is appropriate in light of the level of China's announced retaliatory action ($50 billion) and the level of Chinese goods imported into the United States ($505 billion in 2017)." *Id.*; *see also id.* ("{Because} China's retaliatory action covers a substantial percentage of U.S. goods exported to China ($130 billion in 2017)," "the level of the U.S. supplemental action must cover a substantial percentage of Chinese imports."). Although it pointed to China's retaliatory measures, USTR did not identify any increased burdens or restrictions on U.S. commerce resulting from the unfair practices that USTR had investigated, nor did it discuss how the additional U.S. tariffs were commensurate with the new actions by China. *See id.*

32.     USTR's contemporaneous press statements corroborated the contents of its notice: China's retaliatory tariffs motivated its proposed action. Ambassador Lighthizer stated that the proposed action came "{a}s a result of China's retaliation and failure to change its practice." Office of the United States Trade Representative, *Statement by U.S. Trade*

*Representative Robert Lighthizer on Section 301 Action* (July 10, 2018), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/july/statement-us-trade-representative.

33.     Leading up to the notice, President Trump suggested that the United States' trade imbalance with China, rather than the unfair trade actions at issue under Section 301, were the real basis of the decision.  Pres. Donald J. Trump (@realDonaldTrump), Twitter (June 10, 2018, 9:17 PM EDT), https://twitter.com/realDonaldTrump/status/1005982266496094209.  Over the following weeks, President Trump also expressed his frustration over China's purported manipulation of its currency and national monetary policy, as well as his continued displeasure over China's retaliatory tariffs and the trade imbalance between the two nations.  *See, e.g.*, Pres. Donald J. Trump (@realDonaldTrump), Twitter (July 20, 2018, 8:43AM EDT), https://twitter.com/realDonaldTrump/status/1020287981020729344; Pres. Donald J. Trump (@realDonaldTrump), Twitter (July  20,  2018,  8:51 AM  EDT), https://twitter.com/realDonaldTrump/status/1020290163933630464; Pres. Donald J. Trump (@realDonaldTrump), Twitter (July 25, 2018, 7:20 AM EDT), https://twitter.com/realDonaldTrump/status/1022079127799701504; Pres. Donald J. Trump (@realDonaldTrump), Twitter (July 25, 2018, 7:01 AM  EDT), https://twitter.com/realDonaldTrump/status/1022074452999225344.

34.     Within days of these statements, Ambassador Lighthizer announced that, in light of China's retaliatory tariffs, USTR would propose to increase the additional tariff from 10% to 25% *ad valorem*.  Rather than addressing the practices that USTR investigated pursuant to Section 301 of the Trade Act, he stated that China "{r}egrettably . . . has illegally retaliated against U.S. workers, farmers, ranchers and businesses."  Office of The United States Trade Representative, *Statement by U.S. Trade Representative Robert Lighthizer on Section 301 Action*

(Aug. 1, 2018), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/statement-us-trade-representative.

35.     Shortly thereafter, USTR, at the direction of President Trump, formally proposed "raising the level of the additional duty in the proposed supplemental action from 10 percent to 25 percent." *Extension of Public Comment Period Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 38,760, 38,760 (Aug. 7, 2018).  USTR also set new dates for a public hearing over six days ending on August 27, 2018.  *See id.*; *see also* Office of The United States Trade Representative, *Public Hearings on Proposed Section 301 Tariff List* (Aug. 17, 2018) (modifying hearing schedule), https://ustr.gov/about-us/policy-offices/press-office/press-releases/2018/august/public-hearings-proposed-section-301.

36.     At the same time, USTR adjusted the deadlines for the submission of written comments, setting September 6, 2018—less than a month later—as the new deadline for both *initial and rebuttal* comments from the public and limiting those comments to the discussion of whether specific HTSUS subheadings should be included in the final list.  83 Fed. Reg. at 38,761.  At no point in its request for comments did USTR provide parties the opportunity to comment on the underlying correlation between the overall value of trade affected by List 3 and USTR's findings in its Section 301 report.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 33,608, 33,609 (July 17, 2018).  Over 350 witnesses appeared at the six-day hearing, and the public submitted over 6,000 comments primarily focusing on whether specific HTSUS subheadings should be included or excluded.  Office of the United States Trade Representative, *Request for Public Comment*

*Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, Docket No. USTR-2018-0026, https://beta.regulations.gov/docket/USTR-2018-0026/document.

37.     Just eleven days after receiving final comments from the public, President Trump announced that he had directed USTR "to proceed with placing additional tariffs on roughly $200 billion of imports from China."  The White House, *Statement from the President* (Sep. 17, 2018), https://www.whitehouse.gov/briefings-statements/statement-from-the-president-4/.  Once again, the President made clear that China's response to the $50 billion tariff action (i.e., List 1 and List 2 tariffs) motivated his decision, and he immediately promised to proceed with "phase three" of the plan—an *additional $267 billion tariff action*—"if China takes retaliatory action against our farmers or other industries." *Id.*

38.     Following the President's announcement, USTR published notice of the final list of products subject to an additional tariff, a list commonly known as "List 3."  83 Fed. Reg. at 47,974.  USTR imposed a 10% *ad valorem* tariff that was set to rise automatically to 25% on January 1, 2019.  *Id.*  USTR determined that the List 3 tariffs would apply to all listed products that enter the United States from China on or after September 24, 2018.  *Id.*  USTR did not respond to any of the over 6,000 comments that it received or any of the testimony provided by roughly 350 witnesses.  *Id.*

39.     As legal support for its action, USTR for the first time cited Section 307(a)(1)(B) of the Trade Act, which provides that USTR "may modify or terminate any action, subject to the specific direction . . . of the President . . . taken under Section 301 if . . . the burden or restriction on United States commerce of the denial of rights, or of the acts, policies, or practices, that are the subject of such action has increased or decreased." *Id.*  (brackets omitted).  USTR stated that

the relevant burden "continues to increase, including following the one-year investigation period," adding that "China's unfair acts, policies, and practices include not just its specific technology transfer and IP polices referenced in the notice of initiation in the investigation, but also China's subsequent defensive actions taken to maintain those policies." *Id.*  USTR also cited Section 307(a)(1)(C) of the Trade Act, arguing that China's response to the $50 billion tariff action "has shown that the current action no longer is appropriate" because "China openly has responded to the current action by choosing to cause further harm to the U.S. economy, by increasing duties on U.S. exports to China."  83 Fed. Reg. at 47,975.

40.     In the months that followed, China and the United States attempted to resolve their differences through trade negotiations.  Based on the progress made with China in those negotiations, the Trump Administration announced in December 2018, and again in February 2019, that it would delay the scheduled increase in the List 3 tariff rate from 10 to 25%.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 83 Fed. Reg. 65,198 (Dec. 19, 2018); *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 7,966 (Mar. 5, 2019).

41.     USTR in June 2019 invited the public to seek exclusions from List 3 tariffs on a product-specific basis.  *Procedures for Requests to Exclude Particular Products From the September 2018 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 29,576 (June 24, 2019).  After receiving 30,283 exclusion requests, USTR granted only 1,498 requests and denied the balance without providing any basis for the divergence from its original Section 301 finding

34

as to whether the inclusion of specific HTSUS subheadings in List 3 addressed the underlying

intellectual property practices of China.  *See* Office of the United States Trade Representative,

*Index and Status of Requests for Exclusion from $200 Billion Trade Action (List 3)*, Docket No.

USTR-2019-0005, https://comments.ustr.gov/s/docket?docketNumber=USTR-2019-0005;

*Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology*

*Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 61,674, 61,675 (Nov. 13, 2019).

The majority of the List 3 exclusions expired on August 7, 2020.  *See, e.g.*, *Notice of Product*

*Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer,*

*Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).

42.     The tariffs imposed on products covered by List 3 remain in effect as of the date

of this Complaint, with the exception of the limited number of products for which USTR

extended its originally granted exclusions from the List 3 tariffs.  *See, e.g.*, *Notice of Product*

*Exclusion Extensions: China's Acts, Policies, and Practices Related to Technology Transfer,*

*Intellectual Property, and Innovation*, 85 Fed. Reg. 48,600 (Aug. 11, 2020).  As a result,

plaintiffs have collectively incurred tariffs in excess of $130 million.

**B.     List 4A**

43.     On May 17, 2019, eight days after it published notice of its decision to increase

the tariff rate on imports covered by List 3, USTR announced its intent to proceed with yet

another list—List 4—covering even more products which would then be subject to additional

tariffs.  *Request for Comments Concerning Proposed Modification of Action Pursuant to Section*

*301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual*

*Property, and Innovation*, 84 Fed. Reg. 22,564 (May 17, 2019).  Under USTR's modification,

List 4 would impose an additional tariff of 25% *ad valorem* on products worth $300 billion.  *Id.*

USTR explained that its decision was motivated by China's "retreat{} from specific commitments made in previous {negotiating} rounds {and} announce{ment of} further retaliatory action against U.S. commerce." *Id.*  However, again USTR failed to correlate its action to its the Section 301 unfair trade burdens or with any subsequent events.

44.     On August 1, 2019, citing China's failure to follow through on agricultural purchases and to reduce exports of fentanyl flowing into the United States, President Trump announced that the List 4 tariffs would become effective September 1, 2019, at a rate of 10% *ad valorem*.  Pres. Donald J. Trump, (@realDonaldTrump), Twitter (Aug. 1, 2019, 1:26 PM EDT), https://twitter.com/realdonaldtrump/status/1156979443900067841 (noting a "small additional Tariff of 10% on the remaining 300 Billion Dollars of goods and products coming from China into our Country").

45.     On August 20, 2019, USTR issued a final notice adopting List 4 in two tranches.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 43,304 (Aug. 20, 2019).  List 4A would impose a 10% *ad valorem* tariff on goods worth roughly $120 billion, effective September 1, 2019.  *Id.*  List 4B would impose a 10% *ad valorem* tariff on the remaining goods (with limited exclusions "based on health, safety, national security, and other factors"), effective December 15, 2019.  84 Fed. Reg. at 43,305.  Once again, USTR did not address any of the nearly 3,000 comments submitted or any of the testimony provided by witnesses, other than to claim that its determination "takes account of the public comments and the testimony." *Id.*

46.     As legal support for its action, USTR again cited Section 307(a)(1)(B) and (C) of the Trade Act, stating that it may modify its prior action taken pursuant to Section 301 of the

Trade Act if (1) "{t}he burden or restriction on United States commerce" imposed by the investigated foreign country practice "has increased or decreased," or (2) "the action . . . is no longer appropriate." 84 Fed. Reg. at 43,304. But instead of finding any increased burden on U.S. commerce from the practices that were the subject of USTR's investigation, USTR merely pointed to "China's subsequent defensive actions taken to maintain those unfair acts, policies, and practices as determined in that investigation," including retaliatory tariffs on U.S. imports, retreating from commitments during negotiations, and devaluing its currency. *Id.*

47.     Just ten days later, USTR published notice of its decision to increase the tariff rate applicable to goods covered by List 4A and List 4B from 10% to 15%. *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 45,821 (Aug. 30, 2019). USTR explained that it increased the tariff rate because, shortly after it finalized List 4A and List 4B, "China responded by announcing further tariffs on U.S. goods." 84 Fed. Reg. at 45,822. USTR once again cited to China's retreat from its negotiation commitments and devaluation of its currency as grounds for its action. *Id.*

48.     USTR in May 17, 2019 invited the public to seek exclusions from List 4A tariffs on a product-specific basis. *Request for Comments Concerning Proposed Modification of Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 22,564 (May 17, 2019). On October 18, 2019, USTR announced that starting October 31, 2019, it would accept tariff exclusion requests under List 4. Office of the United States Trade Representative, *USTR Statement on Section 301 Tariff Exclusions on Chinese Imports* (Oct. 18, 2019), https://ustr.gov/issue-areas/enforcement/section-301-investigations/section-301-china/china-section-301-tariff. On

October 24, 2019, USTR published procedures for the exclusion requests.  *Procedures for Requests To Exclude Particular Products From the August 2019 Action Pursuant to Section 301: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 57,144, 57,144 (Oct. 24, 2019).  The window to submit exclusion requests was from October 31, 2019 to January 31, 2020.  *Id.*  After receiving 8,780 exclusion requests, USTR granted 575 requests and denied the balance without providing any basis for the divergence from the original Section 301 finding.  *See* Office of the United States Trade Representative, *Index and Status of Requests for Exclusion from $300 Billion Trade Action (List 4A)*, Docket No. USTR-2019-0017, https://comments.ustr.gov/s/docket?docketNumber=USTR-2019-0017.

49.    The tariffs imposed on products covered by List 4A remain in effect as of the date of this Complaint, with the exception of the limited 87 exclusion requests for which USTR extended its originally-granted exclusions from List 4 tariffs.  *Notice of Product Exclusions: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 54,616 (Sept. 2, 2020).  As a result, plaintiffs have collectively incurred tariffs in excess of $100 million.

50.    On December 18, 2019, as a result of successfully negotiating a limited trade deal with China, USTR published notice that it would "suspend indefinitely the imposition of additional tariffs of 15 percent on products of China covered by" List 4B.  *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 84 Fed. Reg. 69,447, 69,447 (Dec. 18, 2019).  USTR also stated its intent to reduce the tariff rate applicable to products covered by List 4A, *id.*, an action that ultimately became effective on February 14, 2020, when USTR halved the applicable tariff

rate, *Notice of Modification of Section 301 Action: China's Acts, Policies, and Practices Related to Technology Transfer, Intellectual Property, and Innovation*, 85 Fed. Reg. 3,741 (Jan. 22, 2020).

## STATEMENT OF CLAIMS
## COUNT ONE
## (DECLARATORY JUDGMENT—VIOLATION OF THE TRADE ACT OF 1974)

51.     Paragraphs 1 through 50 are incorporated by reference.

52.     The Declaratory Judgment Act authorizes any court of the United States to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

53.     The Trade Act of 1974 does not authorize the actions taken by Defendants that resulted in the List 3 and List 4A tariffs.

54.     Pursuant to Section 301 of the Trade Act, USTR may impose tariffs when it determines that "an act, policy, or practice of a foreign country is unreasonable or discriminatory and burdens or restricts United States commerce, and action by the United States is appropriate." 19 U.S.C. § 2411(b). USTR failed to predicate its action giving rise to List 3 and List 4A on any such determination or finding.

55.     If USTR concludes upon investigation that a foreign country maintains an unfair trade practice, Section 304 of the Trade Act requires USTR to "determine what action, if any," to take within "12 months after the date on which the investigation is initiated." 19 U.S.C.§ 2414(a)(1)(B), (2)(B). USTR's action giving rise to List 3 occurred in September 2018, over a year after USTR initiated the underlying Section 301 investigation on August 18, 2017. USTR's action for List 4A is even further removed from the initial investigation, based on the May 2019 request for comments.

56.     Section 307 of the Trade Act authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act when the burden imposed on U.S. commerce from the foreign country's investigated unfair acts, policies, or practices increases or decreases.

19 U.S.C. § 2417(a)(1)(B).  Section 307 of the Trade Act, however, does not permit Defendants to increase tariffs for reasons unrelated to the acts, policies, or practices that USTR investigated pursuant to Section 301 of the Trade Act.  Congress did not authorize USTR to escalate its focused investigatory findings without a subsequent finding related to the same issue.

57.     Section 307 of the Trade Act also authorizes USTR to "modify or terminate" an action taken pursuant to Section 301(b) of the Trade Act if the initial action taken by USTR "is no longer appropriate." 19 U.S.C. § 2417(a)(1)(C).

58.     Plaintiffs are therefore entitled to a declaratory judgment that Defendants' actions giving rise to List 3 and List 4A are *ultra vires* and contrary to law.

### COUNT TWO
### (VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT)

59.     Paragraphs 1 through 58 are incorporated by reference.

60.     The APA authorizes the Court to hold unlawful and set aside agency action that is: "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; {or} (E) unsupported by substantial evidence."  5 U.S.C. § 706(2).

61.     Defendants acted arbitrarily and capriciously when they violated the statutory requirements to modify a Section 301 tariff action, when they failed to meaningfully consider relevant factors when making their decisions, when they failed to adequately explain their rationale, and for the reasons set forth in Count One.

62.     Defendants acted contrary to the Constitution by exceeding the Congressional delegation of authority in Section 301 and for the reasons set forth in Count One.

63.    Defendants exceeded their statutory authority under the Trade Act in modifying the Section 301 tariff actions under List 3 and List 4A and for the reasons set forth in Count One.

64.    Defendants acted without observance of the procedure required by Section 301, as set forth in Count One.

65.    For List 3 and List 4A, Defendants failed to support their actions with substantial evidence for any asserted "increased burden" from China's technology transfer, intellectual property, and innovation policies and practices that were the subject of USTR's Section 301 investigation for the reasons set forth in Count One.

* * *

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request that this Court

(1)     declare that Defendants' actions to modify Section 301 tariffs through List 3 and

        List 4A are unauthorized by, and contrary to, the Trade Act;

(2)     declare that Defendants arbitrarily and unlawfully modified Section 301 tariffs

        through List 3 and List 4A in violation of the APA;

(3)     vacate the tariff actions pursuant to List 3 and List 4A;

(4)     order Defendants to refund, with interest, any tariffs paid by Plaintiffs pursuant to

        List 3 and List 4A;

(5)     permanently enjoin Defendants from applying List 3 and List 4A tariffs against

        Plaintiffs and collecting any tariffs from Plaintiffs pursuant to List 3 and List 4A;

(6)     award Plaintiffs their costs and reasonable attorney fees; and

(7)     grant such other and further relief as may be just and proper.


                                        Respectfully submitted,


                                        _____
                                        Jeffrey S. Neeley
                                        Nithya Nagarajan
                                        Cortney O. Morgan
                                        Stephen W. Brophy
                                        Joseph S. Diedrich


Dated:  September 18, 2020              HUSCH BLACKWELL LLP
                                        750 17th Street, NW
                                        Suite 900
                                        Washington, DC 20006

                                        *Counsel to Plaintiffs*

43

## <u>CERTIFICATE OF SERVICE</u>

Pursuant to U.S. Court of International Trade Rule 4(b) and (h), I hereby certify that on

September 18, 2020, copies of Plaintiffs' Summons and Complaint were served on the following

parties by certified mail, return receipt requested:

Attorney-In-Charge
International Trade Field Office
Commercial Litigation Branch
U.S. Department of Justice
26 Federal Plaza
New York, NY 10278

General Counsel Joseph L. Barloon
Office of the General Counsel
Office of the U.S. Trade Representative
600 17th Street, NW
Washington, DC 20006

Attorney-In-Charge
Commercial Litigation Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20530

Chief Counsel Scott K. Falk
Office of Chief Counsel
U.S. Customs & Border Protection
1300 Pennsylvania Ave., NW
Washington, DC 20229

_____
Jeffrey S. Neeley
Nithya Nagarajan
Cortney O. Morgan
Stephen W. Brophy
Joseph S. Diedrich